## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **RIGHT-NOW RECYCLING, INC.,** | **CASE NO.: 1:11-CV-364** |
| **Plaintiff,** | **Judge Michael R. Barrett** |
| v. | |
| **FORD MOTOR CREDIT CO.,** *et al.,* | |
| **Defendants.** | |

### OPINION AND ORDER

This matter is before the Court on the October 1, 2014 Report and Recommendation ("Report"). (Doc. 140). The Report recommends granting Right-Now Recycling, Inc.'s ("Right-Now") partial summary judgment motion on its due process claims against the City (Doc. 94), granting Ford Motor Credit Company, LLC's ("Ford") motion for summary judgment (Doc. 120), denying the City of Blue Ash's ("City") motion for summary judgment on its cross-claims (Doc. 121), and denying the City's motion for summary judgment on Right-Now's due process claims (Doc. 122). Right-Now and the City have filed objections to the Report (Docs. 144, 145, 146),[1] and Ford and Right-Now have filed their respective responses to those objections (Doc. 147, 148). These matters are now ripe for review.

## I.     STANDARD OF REVIEW FOR OBJECTIONS

When objections to a magistrate judge's report and recommendation are received on a non-dispositive matter, the district judge must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72.

---

[1] The City requests oral argument on its objections. (Docs. 145, 146). The parties have fully briefed the pertinent issues to the Magistrate Judge and in the objections and respective responses to the Report. Because oral argument would not further assist the Court's resolution of the objections, the requests for oral argument are denied.

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*; *see also* 28 U.S.C. § 636(b)(1).  General objections are insufficient to preserve any issues for review:  "[a] general objection to the entirety of the Magistrate [Judge]'s report has the same effect as would a failure to object."  *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II.   ANALYSIS

### A. Right-Now's Objections

Right-Now objects to the Report's recommendation that summary judgment be granted to Ford on Right-Now's breach of contract claim.  (Doc. 144).  Specifically, Right-Now contests the conclusion that summary judgment is appropriate on the issue of "waiver."  (Id., PageId 3046).  Right-Now argues that the issue of waiver is a mixed issue of fact and law that is inappropriate for summary disposition because a genuine issue of material fact exists as to whether Ford undertook a clear, unequivocal, and decisive act demonstrating the intent to waive by continuing to accept Right-Now's monthly installment payments while possessing the Trucks and by failing to later credit Right-Now for those payments.  (Id. at PageId 3046-47).

Ford responds that Right-Now's objections lack merit.  (Doc. 147).  Ford contends that the objections merely restate arguments previously raised in the briefings considered by the Magistrate Judge such that they are not proper objections.  (Id., PageID 3097-98).  Ford further argues that the Magistrate Judge correctly rejected Plaintiff's argument that Ford's acceptance of monthly installment payments after a default constituted a waiver because such argument was

inconsistent with the terms of the contracts, Ohio waiver law, and the undisputed evidence of record.  (Id., PageId 3106).

Upon review, the Court agrees that Plaintiff's argument is repetitive of the argument raised and considered by the Magistrate Judge.  As such, it is not a specific objection that requires reconsideration here.  Nonetheless, the undersigned agrees with the analysis and the conclusion reached in the Report that Right-Now's waiver argument is unpersuasive.  (Doc. 140, PageId 2966-72).  Accordingly, Right-Now's objection is overruled and the analysis and conclusion of the Magistrate Judge are adopted.

### B.  The City's Objections as to Right-Now's Due Process Claim

The City objects to the Magistrate Judge's Report on five grounds, which are addressed below.

### 1.  First objection

The City argues that the Magistrate Judge erred in using inapplicable standards from "abortion-specific laws" to determine that Right-Now established its claim against the City.  (Doc. 145, PageId 3049, 3065).  It further argues that "whether a policy is facially constitutional or not is essential to determining whether a municipality may be liable for a Section 1983 claim." (Id., PageId 3066).  Right-Now responds that the Magistrate Judge did not err because she relied upon generally applicable constitutional principles and the fact that it was taken from "abortion-specific" caselaw is irrelevant.  (Doc. 148, PageId 3113-14).

The pertinent portion of the Report states:

> Whether or not Policy 19.002 is facially constitutional is irrelevant and does not foreclose a finding that it was unconstitutionally applied to Right-Now. *See Women's Medical Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193-94 (6th Cir. 1997) (laying out the distinctions between facial and as-applied challenges and noting that a statute that is deemed constitutional i[n] some applications may still be enforced in other circumstances).  Right-Now's constitutional

3

claim arises out of the City's alleged failure to provide notice – not from the release of the trucks or the decision by Lieutenant Boone to allow the release. The cases cited by the City are distinguishable because they address whether a municipality may be held liable for the decisions of its employees in the absence of an official written municipal policy. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-84 (1986) (holding that municipal liability could be imposed based on single action of County Prosecutor who was acting as the final decision maker for the county, even in the absence of formal written rules that were intended to establish fixed plan of action to be consistently followed under similar circumstances).[] As the undisputed facts establish that the City's actions in releasing the trucks to Ford were governed by and pursuant to an official City policy – Policy 19.002 – Right-Now need look no further. *See Thomas* [*v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)].

(Doc. 140, PageId 2945-46) (footnote omitted). The City's first objection to the Report specifically is focused on the Magistrate Judge's reliance on *Voinovich*.

Upon review, the undersigned concludes that the Magistrate Judge did not err in the application of *Voinovich*. First, the Report relied on *Voinovich* for generally applicable constitutional principles concerning facial and as-applied challenges, and not for principles that are specific to abortion. (*See* Doc. 140, PageId 246).[2] Second, that caselaw is relevant to Right-Now's § 1983 claim, which requires a determination as to whether an unconstitutional municipal policy caused injury to Right-Now. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). It therefore was not error for the Magistrate Judge to apply the generally applicable constitutional principles set forth in *Voinovich* in determining the constitutionality of Policy 19.002. Third, the Court disagrees with the City, for the reasons explained in more detail as to the second and third

---

[2] As Right-Now correctly points out (Doc. 148, PageId 3114), the constitutional standards articulated in *Voinovich* have been considered and applied in many non-abortion cases. *See, e.g., Watchtower Bible & Tract Soc. of New York, Inc. v. Vill. of Stratton*, 240 F.3d 553, 562 (6th Cir. 2001) (considering the constitutionality of an ordinance in the context of a First Amendment claim, and citing constitutional standards in *Voinovich*), *rev'd on other grounds*, 536 U.S. 150 (2002); *Sam & Ali, Inc. v. Ohio Dep't of Liquor Control*, 158 F.3d 397, 402 n. 7 (6th Cir. 1998) (addressing constitutional challenges to state statutes relating to liquor sales and citing constitutional standards in *Voinovich*); *G.B. v. Rogers*, 703 F. Supp. 2d 724, 728 (S.D. Ohio 2010) (addressing portion of statute concerning the designation of pandering obscenity as an offense subject to sex offender registration, and citing constitutional standards in *Voinovich*).

objections, that whether a policy is facially unconstitutional, rather than unconstitutional as applied, is essential to determining whether a municipality may be liable for a Section 1983 claim. Accordingly, the City's first objection is overruled.

### 2. Second and third objections[3]

The City contends that the Magistrate Judge disregarded Supreme Court precedent when she concluded that Right-Now could establish its § 1983 procedural due process claim if it could show that the City's policy as-applied to Right-Now, even in just a single instance, was unconstitutional. (Doc. 145, PageId 3066-71). Relatedly, the City argues that the Magistrate Judge erroneously imposed *respondeat superior* liability on it for its non-policymaking employees' alleged unconstitutional implementation of Policy 19.002. (Doc. 145, PageId 3071-72). Right-Now responds that Supreme Court precedent supports the finding that the City's actions were attributable to the City and were taken in conformity with the official policy of the City – that is, Policy 19.002. (Doc. 148, PageId 3115-17). Right-Now contends that the City witnesses support a finding that they were acting according to policy. (Id., PageId 3117). As such, Right-Now claims that the Magistrate Judge did not impose *respondeat superior* liability on the City simply because Lieutenant Boone made the decision to release the Trucks since caselaw plainly distinguishes between written policies and unwritten policies and customs. (Id., PageId 3118).

The portion of the Report set forth with respect to the first objection also is relevant here. Of particular relevance are the holding that whether Policy 19.002 is facially constitutional is irrelevant and the citation to *Pembaur*, 475 U.S. at 477-84. Also relevant is the Magistrate Judge's consideration of *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), in which she concluded

---

[3] As the City's second and third objections are intertwined, they are considered together. (Doc. 145, PageId 3066-72).

that *Tuttle* is distinguishable because it involved an *unwritten* policy, and that "Right-Now may establish its § 1983 due process claim if it can show that the City's policy as-applied to it, even in just a single instance, was unconstitutional." (Doc. 140, PageId 2946).

Upon de novo review, the undersigned concludes that the Magistrate Judge did not err in either respect. The doctrine of *respondeat superior* cannot be employed to hold governmental entities liable under § 1983 for the alleged constitutional torts of their employees based solely on the fact that they employed those employees. *Monell*, 436 U.S. at 691. As such, the actions of Lieutenant Boone (a non-policymaker) in regards to the release of the Trucks to Ford without providing Right-Now notice and an opportunity to be heard cannot, standing alone, render the City liable.

But a municipality can be held liable when the employee's conduct is attributable to the direct enforcement of its official policy. *Monell*, 436 U.S. at 691. The "touchstone" of a § 1983 action against a municipality is that an official policy is responsible for the deprivation of rights protected by the Constitution. *Id.* Thus, as the Magistrate Judge correctly recognized, one of the ways to establish a § 1983 claim against a municipality is to identify a municipality's legislative enactments or official agency policy that is alleged to have caused a constitutional violation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Here, Right-Now has identified Policy 19.002, and there is no dispute that Policy 19.002 is an official policy of the City that controls the circumstances presented in this case.[4]

---

[4] Section 4(a) of Policy 19.002 provides, in pertinent part:

> The disposition of seized property pending forfeiture will be by one of the following means:
>
> a. Returned to the owner or lien holder or any other party having a bona fide interest without any forfeiture proceedings when said action would not be properly taken or would not be in the best interest of the law enforcement efforts of the Blue Ash Police Department.

Policy 19.002, § 4(a) (Doc. 136-11, PageId 2750).

The City argues, however, that Policy 19.002 is facially constitutional such that the municipality cannot be held responsible under *Tuttle*, 471 U.S. 808, unless there is considerably more proof than a single incident of unconstitutional application. The undersigned agrees with the Magistrate Judge that *Tuttle* is distinguishable from this case because it involved an unwritten policy rather than a written policy like Policy 19.002. *Id.* at 823-24.[5] Further, nothing in *Tuttle* precludes the imposition of liability on a municipality for a single constitutional deprivation resulting from direct application of a written municipal policy. On the contrary, the Supreme Court has recognized that municipal liability under § 1983 may be imposed even in a single instance of unconstitutional application. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).[6]

Changing course slightly, the City continues to argue, relying on *Board of County Commissioners v. Brown*, 520 U.S. 397, 407 (1997), that there is a distinction between a policy that is facially unconstitutional and one that is unconstitutional as applied, the latter of which requires more proof. In *Monell*, however, the Supreme Court explained that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those

---

[5] None of the cases relied upon by the City for extension of *Tuttle* (Doc. 145, PageId 3067) present circumstances analogous to those in the present case. *Cuyahoga County v. State Auto. Mut. Ins. Co.*, No. 1:080cv01339, 2012 U.S. Dist. LEXIS 153794, at *13-20 (N.D. Ohio Oct. 25, 2012) (relying on *Brown* and *Gregory*, both distinguished *infra*, as well as *City of Canton v. Harris*, 489 U.S. 378, 389 (1989), a failure to train case, in assessing facial constitutionality of the policy in the context of a claim for deliberate indifference to medical needs of a person in custody); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (in an excessive force case arising from an incident where the law enforcement officer, exercising discretion given to him by city ordinances, instructed a police dog to search for and to bite the plaintiff, the district court held that it was the additional discretionary decision of the officer to give the dog the order to bite which was the source of the injury); *Linthicum v. Johnson*, No. 1:02-cv-480, 2006 U.S. Dist. LEXIS 33896, at *106 (S.D. Ohio May 25, 2006) (claim was based on pattern of inadequate discipline by the police department that ultimately resulted in the alleged assault of plaintiff by police officers); *Tyler v. Prince George's County*, No. 88-2820, 1989 U.S. App. LEXIS 22329, at *2 (4th Cir. 1989) (claim of inadequate training).

[6] It is notable that the Supreme Court distinguished between formal policies that "establish fixed plans of action to be followed under similar circumstances consistently and over time" and those single decisions of municipal policymakers that are tailored to a specific situation and not intended to control decisions in later situations. *Pembaur*, 475 U.S. at 481. *Pembaur* involved the latter scenario such that it was necessary to articulate that a single decision of a municipal policymaker (unconnected to an "official policy") still could subject the municipality to liability under appropriate circumstances. *Id.* Unlike *Pembaur*, the present case involved a formal written policy.

whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. at 694.  "Local governing bodies, therefore, can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.  Since Policy 19.002 represents an official policy of the City, the City can be held liable when an employee's direct execution of that policy results in a constitutional violation.

*Brown* is inapposite. The claim raised in *Brown* was not based upon whether the application of the municipality's policy itself was or was not constitutional but instead was based upon whether the municipality could be held liable for the excessive force of one of its employees based upon a theory that the Sheriff made an ill-considered hiring decision.  *Brown*, 520 U.S. at 404-405 (recognizing that "Sheriff Moore's hiring decision was itself legal, and Sheriff Moore did not authorize Burns to use excessive force[;] Respondent's claim, rather, is that a single facially lawful hiring *decision* can launch a series of events that ultimately cause a violation of federal rights.") (emphasis added). The concern was that every act of an employee could somehow be traced back to the hiring decision, and that to find liability based upon that hiring decision alone would make municipalities liable based solely upon *respondeat superior*. *Id.* at 405-15.[7]  Unlike in *Brown*, Right-Now's claim is not based on such a single decision, but on an official written policy, and it is not so attenuated.  Here, the evidence shows that Policy 19.002 controls situations where the City initiates forfeiture proceedings but then decides not to carry through on the forfeiture proceedings and releases the vehicle. (*See, e.g.,* Doc. 103, PageId

---

[7] Similarly distinguishable is the Sixth Circuit's discussion in *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006), upon which the City relies (Doc. 145, PageId 3068), which was made in the context of claims based upon customs and the failure to train officers, rather than the straightforward enforcement of a written policy of the municipality.

654; Doc. 111, PageId 1928, 1932). It further shows that Policy 19.002 authorizes the precise action taken by Lieutenant Boone and that the officers were acting pursuant to Policy 19.002 in releasing the Trucks to Ford without providing Right-Now notice or a meaningful opportunity to be heard. (Doc. 103, PageId 654; Doc. 136-11, PageId 2750). No evidence has been presented that the officers were acting contrary to policy or were otherwise rogue employees acting outside the scope of the policy. Instead, it was the straightforward execution of that official policy that resulted in the alleged constitutional deprivation.

Indeed, in circumstances more analogous to those presented in this case, it has been recognized that a municipality may be liable under § 1983 when a written policy as applied in a straightforward manner results in a constitutional violation. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279-80 (10th Cir. 2009) (rejecting argument that a policy that is facially constitutional but fails to give detailed guidance on how to avert a constitutional violation does not alone give rise to municipal liability, and recognizing that "if the ordinances are unconstitutional as applied, the City is liable"); *see also Galbreath v. City of Oklahoma*, 568 F. App'x 534, 539 (10th Cir. 2014) (rejecting arguments that the City could not be held liable for an employee's conduct where the ordinance was vague as applied to the plaintiff's behavior and where the City did not maintain a policy of applying the ordinance in an unconstitutional manner, and holding that "if the ordinance was unconstitutional as applied to [the plaintiff's] conduct, then [the defendant] may be subject to liability under § 1983.") (internal quotations omitted).[8]

Accordingly, the second and third objections of the City are overruled.

---

[8] While the City again cites to "quick-release" statutes to support its claim, it does not indicate how the Magistrate Judge specifically erred in this respect. The Magistrate Judge correctly explained that the City argued that Policy 19.002 is unconstitutional on its face because it substantially comports with those statutes, but that it was not necessary to address whether the policy is constitutional on its face because Right-Now's made only an as-applied challenge. (Doc. 140, PageId 2945).

### 3. **Fourth objection**

The City argues that the Magistrate Judge erred because neither Policy 19.002 nor the City's alleged conduct proximately caused Right-Now to lose the use of the Trucks.  (Doc. 145, PageId 3072).  The City argues that the proximate cause of Right-Now's injuries was the lawful seizure of its Trucks, which resulted in Right-Now defaulting on its Ohio Retail Agreements with Ford.  (Id., PageId 3072-73). The City further argues that Right-Now "is demanding damages from the City for lost profits it allegedly sustained during the approximately three months that Ford held the Trucks."  (Id., PageId 3074).  Right-Now responds that the City's argument as to the lack of proximate causation is misleading and misses the point that the unconstitutional action at issue is the release of the trucks to Ford without notice to Right-Now, not the initial seizure of the trucks.  (Doc. 148, PageId 3119-20).  In that vein, Right-Now contends that the damages it seeks are caused by the actions of the City and it did not lose the right to notice as a result of its contracts with Ford.  (Id.).

In the Report, the Magistrate Judge concluded that the relevant time period is February 2011, when the City released the Trucks to Ford.  (Doc. 140, PageId 2947).  The alleged injuries thus did not stem from an illegal seizure of the Trucks but from the City's alleged failure to give notice when it released the Trucks to Ford.  (Id.).  Further, the Magistrate Judge determined that the City's argument "mistakenly assumes Right-Now no longer retained a property interest in the trucks at the point of their seizure" and that even if Ford had the right to possession of the trucks upon their seizure, Right-Now still retained a property interest in the Trucks for the purposes of due process.  (Id., PageId 2947-48).

The undersigned finds no error in the analysis and conclusion of the Magistrate Judge. The undersigned agrees that the relevant time period is February 2011 when the City is alleged to

have released the Trucks to Ford without giving Right-Now notice or the opportunity to be heard, and that the record is not at all clear that Right-Now lost all possessory rights to the Trucks at the moment of their seizure. Further, as the Magistrate Judge correctly determined (Id., PageId 2948) even if Ford had the right to possession of the Trucks upon their seizure, Right-Now still retained a property interest in the Trucks for purposes of due process, and the City has not shown otherwise. Accordingly, the undersigned adopts the Magistrate Judge's conclusion and overrules the City's fourth objection.

### 4. **Fifth objection**

The City argues that the Magistrate Judge erred in finding that Right-Now's procedural due process rights were violated because Right-Now was afforded the procedural protections due to it since it knew the trucks were seized under a lawful search warrant, knew the City had no intention of returning the trucks, and knew that Ford was entitled to possession of the trucks due to Right-Now's breach of the contracts with its lender. (Doc. 145, PageId 3074-76). The City further takes issue with the Magistrate Judge's analysis of *State v. Mateo*, 57 Ohio St. 3d 50 (1991), *City of West Covina v. Perkins*, 525 U.S. 234 (1999), and *City of Dallas v. VSC, LLC*, 347 S.W.3d 231 (Tex. 2011). (Id., PageId 3075-79). Right-Now responds that the Magistrate Judge's analysis was correct, and that the City's continued reliance on *Mateo*, *City of Dallas*, and *City of West Covina* is misplaced as explained in the Report. (Doc. 148, PageId 3123-26).

Upon review, the undersigned finds no error in the analysis and conclusion of the Magistrate Judge. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The notice must be of such nature as reasonably to convey the required

11

information, and it must afford a reasonable time for those interested to make their appearance[.]"  *Id.* (citations omitted).  "A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful."  *City of West Covina*, 525 U.S. at 240 (citing *Mullane*, 339 U.S. at 314).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Here, the undersigned agrees with the Magistrate Judge that providing oral notice that the Trucks were seized and that the City intended to forfeit and not return the Trucks to Right-Now was not adequate to satisfy the requirements of Due Process under the circumstances of this case. As recognized by the Magistrate Judge, (Doc. 140, PageId 2952-55), the evidence demonstrates that the City did not specifically notify Right-Now that it was releasing the Trucks to Ford prior to Ford taking possession of the Trucks on February 17, 2011.  It also is undisputed that the City never initiated forfeiture proceedings in court.  (*See id.*, PageId 2955).  The notice that the City provided Right-Now informed Right-Now that it could expect to have an opportunity to contest the seizure during the course of forfeiture proceedings.  It did not provide Right-Now with notice that the City would unilaterally release the Trucks to Ford without initiating forfeiture proceedings and without providing Right-Now with prior notice to give it an opportunity to contest or otherwise be heard on the issue.

*Mateo*, *City of West Covina* and *City of Dallas* are distinguishable from this case.  Unlike the present case, *Mateo* involved a situation where the prosecution did not strictly comply with the requirements of Ohio Rev. Code § 2925.13, but the owner, a criminal defendant, nevertheless had actual knowledge of the state's forfeiture proceedings at the time he entered a guilty plea in court because the judge overseeing the entry of the guilty plea ensured that the owner was aware

of the forfeiture and of his rights to challenge those proceedings, and the owner articulated his stance on doing so to the court.  *Mateo*, 57 Ohio St. 3d at 52-53.  Further, nothing in *Mateo* suggests that it involved a situation where there was notice of an intent to pursue forfeiture hearings that never were initiated or a unilateral decision to take a different course of action without providing any notice and hearing to the owner.  The undersigned agrees with the Magistrate Judge (Doc. 140, PageId 2962) that the property owner's ability to file a pre-indictment motion contesting the seizure under Ohio Rev. Code § 2981.03 does not obviate the City's duties of providing notice and an opportunity to be heard when it decides not to pursue a forfeiture hearing and to instead unilaterally release the Trucks to Ford based upon a City policy that is not generally available.[9]

Similarly distinguishable is *City of West Covina*.  *City of West Covina* involved the seizure of personal property from a home by the police.  525 U.S. at 236.  Upon seizing the property, the police left a valid search warrant that listed the seized property and named the issuing magistrate judge and the executing officer but that did not specify how to obtain the return of the property.  *Id.* at 236-37.  The owner sued the officers, alleging that the remedies for the property's return did not satisfy due process.  *Id.* at 237-38.  The Court held that the notice contained in the search warrant was sufficient due process and that the officers did not have to provide individualized notice of the state-law remedies that were published, generally available statute statutes.  *Id.* at 241.  As the Magistrate Judge correctly recognized (Doc. 140, PageId 2959-60), however, *City of West Covina* did not address the central issue presented in this case – that is, what, if any notice must a municipality provide when two entities assert a property

---

[9] Although the City argues that "Ford was entitled to repossess the Trucks if they were seized" (Doc. 145, PageId 3076), that argument does not fully reflect the precise language of the Ohio Retail Agreements.  Further, as explained *supra*, the record does not clearly demonstrate that Right-Now lost all possessory rights to the Trucks at the moment of their seizure

interest in lawfully seized items and the municipality unilaterally and in the absence of court proceedings determines which entity has the greater property interest. Indeed, the notice to Right-Now of the seizure of the property and the intent to pursue forfeiture proceedings may have been sufficient to allow Right-Now to consider and pursue its statutory remedies in relation to a forfeiture proceeding. But when the City, without any notice and pursuant to a not published or generally available policy, ceased the pursuit of forfeiture proceedings and unilaterally released the Trucks to Ford, Right-Now was deprived of a meaningful opportunity to be heard. As the Magistrate Judge correctly observes, "Right-Now therefore cannot be held responsible for knowing that the trucks would potentially be released to a lienholder as a matter of City policy in the event that forfeiture was not pursued by the City" and to act accordingly. (Doc. 140, PageId 2959). Under such circumstances, notice was essential to satisfying the due process obligations. (Id., PageId 2959-60) (citing relevant caselaw).

Likewise, the decision of the Texas Supreme Court in *City of Dallas,* 347 S.W.3d 231, is not on point here. As the facts in the *City of Dallas* "mirror those in [*City of*] *West Covina.*" 347 S.W.2d at 239, the case is distinguishable for the same reasons set forth *supra.* Further distinguishing *City of Dallas* from the instant case is that the chapter 47 proceedings at issue in that case are initiated when rightful ownership is in dispute or contested, during which period of time the officer who seized the property must secure the property until *the court directs its disposition. City of Dallas*, 347 S.W.3d at 232; *see also* Tex. Code Crim. Proc. art 47.01, 47.03). As such, the owner's actual knowledge of the seizure was sufficient to alert it to proceed with its remedies under chapter 47 while the property remained secured by the officer, and it had a full opportunity to do so before disposition of the property. *Id.* at 232, 235. After the proceedings concluded, the officer was permitted to dispose of the property even if an interested party failed

14

to assert an interest during the chapter 47 proceedings despite having the opportunity to do so. *Id.*  In contrast to *City of Dallas*, there is no evidence that proceedings were initiated in the instant case and the officer did not secure the Trucks until disposition by the court despite more than one party having a known interest in the Trucks.  Rather, the City disposed of the Trucks unilaterally, without a court proceeding or notice to Right-Now.  Accordingly, the undersigned agrees with the Magistrate Judge that *City of Dallas* "is distinguishable because the constitutional violation alleged by Right-Now relates to the City's failure to provide notice of the release of the Trucks to Ford, not to whether the City was required to provide notice of Right-Now's post-seizure remedies at the time of the initial seizure."  (Doc. 140, PageId 2960).

Accordingly, the City's fifth objection is overruled.[10]

## C.  **The City's Objections as to Ford**

The City objects to the Magistrate Judge's Report on four grounds, which are addressed below.

### 1.  **First objection**

The City argues that the Magistrate Judge misapplied the language of the Hold Harmless Agreements and erroneously determined that Ford did not have a duty to indemnify or hold the City harmless in relation to Right-Now's due process claim.  (Doc. 146, PageId 3086-89).  The City contends that the Hold Harmless Agreements "clearly and unambiguously" obligate Ford to indemnify the City for "any liability or claim" made against it arising out of the City's release of

---

[10] While the City also argues that the Magistrate Judge failed to construe the facts in the light most favorable to it (Doc. 145, PageId 3079), the undersigned disagrees for two reasons. First, the City's argument is premised upon accepting facts that are consistent with its argument that it provided notice at the time of the seizure that it intended to pursue forfeiture proceedings and did not intend to return the Trucks to Right-Now.  As explained *supra*, the relevant action is the release of the Trucks to Ford rather than the seizure.  Second, none of the facts cited by the City would demonstrate that the City provided meaningful notice to Right-Now that it was releasing the Trucks to Ford before it did so.

the Trucks, which includes the City's alleged due process violation and which is not limited in scope to physical damage.  (Id., PageId 3088-89).

Ford responds that the City's arguments merely restate prior arguments and thus are not proper objections.  (Doc. 147, PageId 3097).  It also contends that the Magistrate Judge correctly determined that Ford did not breach the Hold Harmless Agreements because Right-Now's claim that the City violated its constitutional due process rights by transferring the Trucks without notice and a hearing does not arise out of the release.  (Id., PageId 3098).  Ford argues that the Rule 15(a) Order is not binding here, and it agrees with the Magistrate Judge that the duty to provide notice to Right-Now arose before the Trucks were released while Ford's obligations under the Hold Harmless Agreements did not arise until after the Trucks were released.  (Id., PageId 3099).  It contends that the City is trying to shoehorn its due process claim into the Hold Harmless Agreements improperly by arguing that the due process claim would not have arisen if the City had not released the Trucks.  (Id., PageId 3100).  Ford contends that the Magistrate Judge rejected those precise arguments, and that her conclusion is buttressed by a proper determination that the duty to indemnify was related to physical damage only.  (Id., PageId 3100-01).

The Hold Harmless Agreements at issue provide:

Ford Motor Credit is the first secured lien holder on the above-mentioned collateral.  In this capacity Ford Motor Credit is entitled to possession of the vehicle under the contractual agreement made with Right-Now Recycling, Inc. on June 26, 2009 [and January 28, 2010].

Ford Motor Credit agrees to indemnify and hold you harmless for any liability or claim made against you arising out of your releasing of this vehicle to Automobile Recovery.

Anything contained herein to the contrary notwithstanding, the liability of Ford Motor Credit to Blue Ash Police Department hereunder shall be limited in amount to the value of the vehicle released to Ford Motor Credit or its agent.

16

(Docs. 106-6, 106-7). In construing this language, the undersigned is not bound by the prior Rule 15(a) Order for the reasons set forth by the Magistrate Judge. (Doc. 140, PageId 2978-80). Applying the clear and unambiguous language of the agreements in this case, the undersigned agrees with the Magistrate Judge that the agreements do not obligate Ford to indemnify the City or hold it harmless in regards to Right-Now's due process claim.

As the Magistrate Judge correctly recognized (Doc. 140, PageId 2986-87), Right-Now's due process claim does not "arise out of" the release of the Trucks, but instead arises out of the City's failure to provide Right-Now prior notice of the City's intent to transfer possession of the Trucks to Ford. In other words, Right-Now's due process claim flows from the failure of the City to give notice to Right-Now prior to release rather than from the release itself. As such, the indemnification and hold harmless provisions are not triggered in this instance.

As for the damages provision, it need not be addressed given that the conclusion that the due process violation does not "arise out of" the release of the Trucks to Ford is dispositive. Nevertheless, the undersigned agrees with the Magistrate Judge to the extent she interpreted the provision as supporting a finding that Ford's obligations do not extend to insuring the City against its own due process violation. The damages provision ties the limit of Ford's potential liability under the Hold Harmless Agreements directly to the value of the Trucks, thereby indicating that Ford shall be liable for physical damages or other physical loss or disposal of the vehicle after the seizing authority releases the vehicle.

Accordingly, the City's first objection is overruled

### 2. Second objection

The City objects as to the Magistrate Judge's conclusion that there was a factual dispute regarding consideration. (Doc. 146, PageId 3090). It contends that Ford's call logs and the

17

timing of the Hold Harmless Agreements and the release of the Trucks prove there was bargained-for consideration.  (Id.).

Ford again responds that the City's arguments merely restate prior arguments and thus are not proper objections.  (Doc. 147, PageId 3097).  Ford further contends that the Magistrate Judge correctly determined that a genuine issue of material fact exists as to whether bargained-for consideration supports the Hold Harmless Agreements.  (Id., PageId 3102).  In support, Ford points to the testimony of Ms. Burton as well as the lack of testimony from Detective Kelley as to his knowledge or discussion of the Hold Harmless Agreements.  (Id.).

While the undersigned agrees with the Magistrate Judge that there is conflicting evidence presented by the parties such that there is a genuine issue of material fact as to whether there is valid consideration, the resolution of this issue is largely immaterial to the outcome given the conclusion reached on the first objection that Ford's obligations under the Hold Harmless Agreements were not triggered. Consistently, the Magistrate Judge observed, "even assuming, *arguendo*, that the Hold Harmless Agreements are supported by consideration and are therefore valid and enforceable contracts, Ford is entitled to summary judgment on the City's breach of contract claim."  (Doc. 140, PageId 2983).

Accordingly, the City's second objection is overruled.

### 3.  <u>Third objection</u>

The City objects to the Magistrate Judge's grant of summary judgment to Ford on its promissory estoppel cross-claim.  (Doc. 146, PageId 3091).  The City argues that the promise to indemnify the City for damages relating to Right-Now's § 1983 claim was clear and unambiguous and that the Magistrate Judge erred in construing the Hold Harmless Agreements to relate only to potential liability for physical damages to the Trucks.  (Id.).  It contends that it

reasonably and foreseeably relied on Ford's promise to indemnify it and was damaged by Right-Now's claims for loss of use of the Trucks.  (Id., PageId 3092).

Ford responds that the City's arguments merely restate prior arguments and thus are not proper objections.  (Doc. 147, PageId 3097).  Ford also takes the position that the Magistrate Judge correctly concluded that Ford did not clearly and unambigiously promise to indemnify the City for a constitutional violation for the purposes of a promissory estoppel claim.  (Id., PageId 3103).  Ford argues that, contrary to the City's argument, the Magistrate Judge did not identify the terms of the Hold Harmless Agreements as fatally ambiguous and instead concluded that the Hold Harmless Agreements plainly and unambiguously limited Ford's duty to indemnify to physical damage unrelated to any damage resulting from a due process violation.  (Id.).

The elements of a promissory estoppel claim under Ohio law are "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise."  *Sweitzer v. American Express Centurion Bank*, 554 F. Supp. 2d 788, 796 (S.D. Ohio 2008) (quoting *Weiper v. W.A. Hill & Assocs.*, 661 N.E.2d 796, 803 (Ohio Ct. App. 1995)) (internal quotations omitted).

Upon review, the undersigned agrees with the Magistrate Judge (Doc. 140, PageId 2987-88) that the City's claim for promissory estoppel fails for lack of a "clear, unambiguous promise" that Ford would indemnify the City and hold the City harmless for the any constitutional violations by the City occurring prior to the release of the vehicles. That holding is consistent with the holding concerning the breach of contract claim in that it reaffirms that the clear and unambiguous language of the Hold Harmless Agreements demonstrates that Ford's promises to indemnify the City and hold the City harmless relate only to the City's potential liability for

19

those damages flowing from the release of the Trucks rather than from those arising pre-release from constitutional violations.  Accordingly, the City's third objection is overruled.

### 4.  **Fourth objection**

The City contends that the Magistrate Judge misapplied applicable law by finding that the City, not Ford, was primarily liable for Right-Now's damages.  (Doc. 146, PageId 3092).  It claims that the damages arose from the loss of the use of the Trucks while possessed by Ford, and not by the City.  (Id., PageId 3093).  For that reason, it claims it can only be secondarily liable. (Id.).

In addition to asserting that the City's arguments merely restate those presented to the Magistrate Judge, Ford contends that the Magistrate Judge correctly determined that Ford was not the party with primary liability for Plaintiff's constitutional claims against the City for the purposes of the City's indemnification claim.  (Doc. 147, PageId 3104).   Ford again points out that the due process claim against the City arises out of its failure to provide notice rather than out of its release of the Trucks to Ford, which renders the City primarily liable.  (Id., PageId 3105).  It further characterizes any claim as to the nature of Right-Now's compensatory damages against the City as premature because Right-Now sought summary judgment only as to the liability of its constitutional claim against the City.  (Id.).

Upon review, the undersigned agrees with the conclusion of the Magistrate Judge.  (Doc. 140, PageId 2989).  As the Magistrate Judge correctly observed, Right-Now claims injuries resulting from the City's failure to provide notice that it was going to release the Trucks to Ford, an action for which only the City was responsible.  As such, the City bears primary liability for any injuries caused by the failure to provide notice and an opportunity to be heard.

Accordingly, the City's fourth objection is overruled.

## III.    CONCLUSION

Consistent with the foregoing, the objections of Right-Now (Doc. 144) and the City (Docs. 145, 146) are **OVERRULED** and the Report (Doc. 140) is **ADOPTED**.  It is **ORDERED** that:

1.  Right-Now's motion for partial summary judgment on its due process claims against the City (Doc. 94) is GRANTED;

2.  Ford's motion for summary judgment (Doc. 120) is GRANTED;

3.  The City's motion for summary judgment on its cross-claims (Doc. 121) is DENIED; and

4.  The City's motion for summary judgment on Plaintiff's due process claim (Doc. 122) is DENIED.

**IT IS SO ORDERED**.

s/Michael R. Barrett_____
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT